UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-------------------------------------------------------

BRIAN MCMULLAN,

                   Plaintiff,

     - against -

MCI LLC d/b/a/ VERIZON BUSINESS; VERIZON
BUSINESS; and VERIZON COMMUNICATIONS
INC.,

                   Defendants.

-------------------------------------------------------X

COMPLAINT

JURY TRIAL DEMANDED

MAY 1 0 2007

U.S.D.C. S.D. N.Y.
CASHIERS

COMES NOW Plaintiff, Brian McMullan ("McMullan"), by and through his undersigned

counsel, The Law Offices of Neal Brickman, P.C., 317 Madison Avenue, 21st Floor, New York,

New York 10017, and as and for his Complaint against Defendants, MCI LLC d/b/a Verizon

Business, Verizon Business and Verizon Communications, Inc. (Collectively "Defendants" or

"defendants"), states and alleges as follows:

### NATURE OF ACTION

1.    This is an action for age discrimination in contravention of Title VII of the Civil

Rights Act of 1964, as amended, the Age Discrimination in Employment Act ("ADEA"), the

New Jersey Law Against Discrimination N.J.S.A. §10:5-1 et seq. ("LAD"), as well as various

state and common law causes of action.

2.   This action seeks compensatory and punitive damages, as well as costs and

reasonable attorneys' fees. McMullan was discriminated against on the basis of his age and

retaliated against in direct contravention of the above-referenced statutes for attempting to protect

his civil rights.  As a result of Defendants' discriminatory acts, McMullan was disparately

singled out for improper, disproportionate and actionable discipline, improperly terminated and denied routine benefits, as well as other monies due and owing to him.

### JURISDICTION

3.    Jurisdiction over the federal claims is invoked pursuant to 28 U.S.C. §1331, in that these claims arise under the laws of the United States; and over the New Jersey state law claims pursuant to the doctrine of pendent jurisdiction. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because Plaintiff and Defendants reside in different states and the amount in controversy, exclusive of interest and attorney's fees, exceeds the minimum requirements.

4.    Charges against Defendants alleging discrimination on the basis of age were timely filed with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Right to Sue Letter on or about February 12, 2007, which was duly received by this office on behalf of Mr. McMullan on or about February 14, 2007 - more than ninety (90) days prior to this filing. (A true copy of the Right to Sue Letter is annexed hereto as Exhibit "A").

### VENUE

5.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendants maintain offices in this district and Plaintiff now resides in close proximity hereto.

### PARTIES

6.    McMullan is a male citizen of the United States with his principal residence in Suffern Township, New York 10901.

7.    Upon information and belief, at all times relevant hereto, defendant MCI LLC d/b/a Verizon Business and Verizon Business were, and are, foreign corporations with principal

places of business outside of the State of New York and are wholly-owned subsidiaries of Verizon Communications, LLC.

8.     Upon information and belief, at all times relevant hereto, Verizon Communications, Inc., was, and is, a Delaware corporation with principal place of business without the State of New York and which routinely conducts business and maintains offices in the State of New York, and is the parent company of Verizon Business.

## STATEMENT OF FACTS

9.     Brian McMullan, a Fifty-Six (56) year-old male, brings this action against his former employer, MCI, now Verizon Business ("Verizon")[1], for discrimination based on his age. Mr. McMullan was, at the time of his improper termination, 54 years old.

10.     Mr. McMullan, at the time of his termination, had been a dedicated, successful and loyal employee of MCI for over twenty years.

11.     During that time period, it is unquestioned that he performed his duties with insight, diligence and success.

12.     It is equally irrefutable that during those twenty-one years, Mr. McMullan had never been subjected to a single disciplinary procedure and, moreover, had received regular raises and promotions.

13.     At the time of his termination, Mr. McMullan held the position of senior manager realizing annual compensation approximating $150,000.00.

14.     Mr. McMullan and his team were integrally responsible for substantial growth of the MCI "business" over the past twenty-one (21) years -- growth that resulted in increased

---

[1] Verizon completed its purchase of MCI, upon information and belief, in early 2006.

equity and valuation increases for MCI through, specifically, his leading the Global Customer Network Engineering -- a business section sought by Verizon and which became a basis for "Verizon Business".

15.    In so doing, Mr. McMullan successfully supervised in excess of 70 engineers, a number far greater than any other senior manager and commensurate with the responsibility of *director-level* employees of MCI.

16.    Nevertheless, he was not compensated at the director-level. In contrast, other younger management personnel who assumed such duties were regularly and consistently compensated for their work at levels that were appropriate to their level of work and duties.

17.    As Mr. McMullan and his team were based in New Jersey, he was compelled to, and successfully did, run his unit with virtually no supervision; his "supervisor", Rick Simchick maintaining his office in Texas.

18.    Moreover, Mr. McMullan remained loyal to MCI and held his position, even when many other managers were taking their leaves, even after the Worldcom scandal erupted causing Mr. McMullan and his family, personally, to lose virtually his entire retirement portfolio in lost stock opportunities, as well as millions in stock options.

19.    As to the particulars regarding Mr. McMullan's termination from MCI, the methodology and timing are particularly striking.

20.    The alleged, after the fact, basis for Mr. McMullan's termination is purported to be his failure to use proper managerial judgment in conjunction with a project that was not only not his initial responsibility, but also which was completed over one year prior to his termination and in which he acted to protect the rights of all MCI employees involved.

-4-

21.    Tellingly, no younger management personnel were terminated for incidents which took place over one year prior, much less were any such younger similarly situated personnel terminated on the basis of hind-sight whole cloth allegations concerning previously resolved issues. The red herring introduced by Defendants after the fact in a vain effort to assuage their guilt and cloud the issues cannot, and do not, avoid these simple facts.

22.    Specifically, Mr. McMullan was asked to take on an additional assignment in 2004 that required him to complete a PC Refresh project that was not assigned to Mr. McMullan's group.

23.    Ultimately, in order to accommodate this additional project, he had to shuffle his team so as to "lend" two engineers to complete the PC Refresh project, while the rest of his team had to juggle their schedules to do the work normally handled by the two engineers on "loan".

24.    The task that had been assigned to those two engineers, and had been expressed to Mr. McMullan, was to transfer the files from the existing computers to new computers. At that juncture, those two engineers while still reporting to McMullan had been lent to the PC Refresh project under others directions and mandates.

25.    The job came with a myriad of specifications that included, but were not limited to, those concerning the limits of the work.

26. Specifically, only work files were to be transferred. Other files were to be ignored.

27.    In fulfilling this task, one of the two assigned engineers, Christine Nocella, apparently -- for reasons at this time unknown -- browsed various files on a "Manager's",

Devendra Manhas, computer.[2]

28.    As a result of her "perusal", she found items that she *believed* were improper. When she communicated the same to the Manager, he asserted that the same were music files.

29.    The engineer then contacted Mr. McMullan and told him of the issue and that she believed the files were improper and not music downloads.

30.    Faced with a situation concerning a project -- that was not even his to begin with - - concerning items that were beyond the scope of the project, Mr. McMullan sought to quash any internal dispute; protect his engineer from any potential retaliation from the Manhas, as well as any repercussions for potentially overstepping the related bounds of the project; and attempt completion of the project within the short time-frame directed by the company.

31.    Mr. McMullan took it upon himself to meet with Manhas and told him that the files would not be returned to him, reminded Manhas of the Company's policy prohibiting the use of Company equipment for improper/personal purposes and warned him that if the behavior repeated itself that he would face further discipline, including termination.

32.    Mr. McMullan then spoke with the engineer's manager, Parthia Ghost, and explained the situation. That manager specifically concurred with Mr. McMullan's actions.

33.    Mr. McMullan further spoke to the engineer to confirm that she would not face any retaliation from her dispute with the Manhas.

34.    In short, Mr. McMullan acted as the consummate professional; he, contrary to MCI's thirteenth hour hind-sight assessment, went out of his way to ensure smooth operation

_____

[2] Interestingly, this same Manager, Manhas, had replaced the engineer's, Nocella's, husband in Mr. McMullan's group a short time before. Shortly after Manhas had replaced the engineer's husband, the engineer's husband was terminated from his new group.

within his unit and protect his employees, while taking reasonable steps to put the Manager on notice that any future improprieties would have grave repercussions on his future at the Company.

35.    The following July, *in 2005*, while in Texas, the computers from the refresh project were purged. In the course of that action, the technicians discovered, for the first time, that the computer of the Manager in question contained improper and potentially illegal pornography.

36.    It is clear that MCI's actions in terminating Mr. McMullan on August 19, 2005 were based on additional criteria aside from the "purported" misjudgment with regard to the above-referenced events.

37.    After giving twenty-one years of successful and dedicated service to MCI, Mr. McMullan was turned out of the office without ever being told the basis for his termination.

38.    After being called into human resources on August 19, 2005, he was summarily told of his termination; escorted to his office; watched as he collected his personal items; and escorted from the building -- all within approximately one hour.

39.    Amazingly, MCI now asserts that the basis stemmed from the events in 2004 which occurred more than a year prior to his termination. A bizarre admission considering the fact that less senior, younger management members were not even disciplined, much less terminated, in prior instances of pornography downloaded on company computers. Nor was the manager, Parthia Ghost, who concurred with Mr. McMullan's action, even disciplined, much less terminated.

40    Aside from the humiliating and abusive methodology employed by MCI, it must

-7-

be noted that the younger alleged perpetrator, the Manager, was given approximately two weeks notice of his termination during which he was placed on *paid* leave.

41.    Mr. McMullan was given no such notice, nor the opportunity to refute his termination, whatsoever.

42.    Moreover, it is understood that Manhas in question was given notice of the basis for his termination. Mr. McMullan was given none.

43.    It is further known that prior incidents of younger employees using MCI computers to access, view or download pornographic materials resulted in mere warnings for the wrongdoer and *no* negative repercussions whatsoever for the manager.

44.    As these other instances involving pornography involved younger managers, there is no question then that Mr. McMullan was the subject of disparate treatment based on his age.

45.    No respectable investigation was completed before a twenty-one year veteran with an *unblemished* record, disciplinary or otherwise, at MCI was summarily terminated. Younger management members were not summarily dismissed in the manner applied to Mr. McMullan.

46.    Moreover, in terminating Mr. McMullan in the dramatic and scandalous way that they did, MCI effectively black-balled Mr. McMullan in the industry, making him a focus of gossip, ridicule and speculation and preventing him from earning a living.

47.    Further indication of MCI's discriminatory intent can be found in the fact that neither the engineer nor her manager were even warned or disciplined in any manner, much less terminated or blackballed, as a result of their involvement in the PC Refresh project, despite their having the same, if not greater, information than Mr. McMullan as to what was actually contained in Manhas' computer files.

-8-

48.    Not surprisingly, both such individuals were younger than Mr. McMullan.

49.    MCI compounded these unsupportable actions by denying Mr. McMullan not only an earned, accrued and awarded bonus of $15,000.00 for his performance in the first half of 2005, but also by refusing to mature his various stock option grants -- valued at approximately $12,500.00 -- that were routinely matured as a matter of company policy upon the termination of qualified individuals, especially at Mr. McMullan's executive and seniority level.

50.    MCI also refused to allow Mr. McMullan to take advantage of its severance program, despite the acknowledged and specifically admitted fact that he was not being terminated for cause.  Defendants have since claimed that such a denial was mandated by the applicable plan.  However, upon information and belief, other younger managers, similarly situated, were allowed to participate in such programs.

51.    These additional bad acts have only compounded Mr. McMullan's damages.

52.    It appears that the only rational basis for MCI's actions was to get rid of McMullan was illegally based on his age and his related seniority, especially in the context of the upcoming merger discussions and the imminent vesting of certain stock grants.

53.    There is no question that part of Verizon's interest in MCI was Mr. McMullan's business and that he would have had a position in the combined entity.  It simply was a convenient time to get rid of Mr. McMullan. an older, more accomplished employee.

54. It is submitted that but for his age and seniority, Mr. McMullan would not have been terminated or tossed to the curb in such a malicious and callous manner, nor would he have been denied proper pay during his time working for the company, nor would he have been denied his bonus or the accelerated maturation of outstanding stock options.

-9-

## AS AND FOR A FIRST CAUSE OF ACTION
### (Age Discrimination in Employment in Contravention of the ADEA and LAD)

55.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "54" with the same force and effect as if fully set forth herein at length.

56.    In the course of his employment, Plaintiff performed the duties commensurate with the responsibility of *director-level* employees, however, he was not paid commensurate with those duties.

57.    Younger employees, including members of management, were paid commensurate with their duties and responsibilities.

58.    The disparity between Mr. McMullan's compensation vis-a-vis younger similarly situated individuals when the respective duties and responsibilities are factored in clearly constitutes disparate treatment on the basis of age.

59.    Younger management members were not directed to assume additional duties with any commensurate pay increases as Mr. McMullan was compelled to do.

60.    Mr. McMullan supervising in excess of 70 engineers, far more than any other senior manager at MCI, without commensurate compensation, constituted disparate treatment based upon age.

61.    As Mr. McMullan and his team were based in New Jersey, he was compelled to, and successfully did, run his unit with virtually no supervision; his "supervisor", Rick Simchick maintained his office in Texas.

62.    No younger similarly situated members of management were compelled to

-10-

supervise such large numbers of engineers and other employees with virtually no supervision or support.

63.    The ADEA and LAD prohibit discrimination on the basis of age.

64.    As a direct result of these acts of discrimination through disparate treatment solely on the basis of age, Mr. McMullan suffered injury and harm.

WHEREFORE, Plaintiff respectfully requests judgment over and against Defendants for:

Compensatory damages in the amount not less than Two Hundred and Fifty Thousand Dollars ($250,000.00); punitive damages in an amount not less than One Million Dollars ($1,000,000.00); costs and disbursements of this action, including reasonable attorneys fees; and any such other or further relief as the Court deems fit and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Discriminatory Disparate Treatment Regarding Bonuses and Stock Options)

65.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "64" with the same force and effect as if fully set forth herein at length.

66.    Plaintiff was denied his earned and accrued bonus for the prior year at the time of his improper termination.

67.    Defendants also refused to accelerate the maturation of certain of his previously awarded stock option grants that were routinely matured, as a matter of company policy, upon the termination of qualified individuals, of which Mr. McMullan was one.

68.    Defendants did not refuse to accelerate the maturation of such earned and awarded but not vested stock option grants to younger terminated employees -- especially those terminated without cause, as Defendants represented that Mr. McMullan had been.

69.    As a direct result of this discriminatory treatment, Plaintiff suffered injury and harm.

WHEREFORE, Plaintiff respectfully requests judgment over and against Defendants for:

Compensatory damages in an amount not less than Fifty Thousand ($50,000.00); punitive damages in an amount not less than One Million Dollars ($1,000,000.00); costs and disbursements of this action, including reasonable attorneys fees; and any such other or further relief as the Court deems fit and proper.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Wrongful Discriminatory Termination In Contravention of the ADEA and LAD)

70.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "69" with the same force and effect as if fully set forth herein at length.

71.    Plaintiff was terminated without just cause -- and, in fact, was specifically told that his termination was without cause -- on August 19, 2005 when he was notified of his termination; followed to his desk; scrutinized as he collected his personal property; and escorted from the premises. This repugnant and humiliating behavior was implemented despite Mr. McMullan's twenty-one (21) years of successful, loyal and unblemished performance for the company.

72.    Moreover, the now purported basis for his termination, his purportedly, in hind-sight, improper handling of an instance of pornographic materials being found on a company computer, is nothing but a pretext for the real basis for his termination, namely age discrimination.

73.    Specifically, other younger members of management involved in this specific

-12-

incident were not even warned, much less disciplined in any manner, much less summarily terminated.

74.     Moreover, other younger employees and members of management were not disciplined, much less terminated, in prior instance of pornography being found on company computers.

75.     This clear disparate treatment, in unto itself, sets forth grounds for a cause of action for illegal discriminatory termination on the basis of age.

76.     Both the ADEA and the LAD prohibit discrimination on the basis of age.

77.     As a direct result of this improper discriminatory termination, plaintiff suffered injury and harm.

WHEREFORE, Plaintiff respectfully requests judgment over and against Defendants for:

Compensatory damages in the amount not less than Two Hundred Fifty Thousand Dollars ($250,000.00); punitive damages in an amount not less than Two Million Dollars ($2,000,000.00); costs and disbursements of this action, including reasonable attorneys fees; and any such other or further relief as the Court deems fit and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Implied Contract/Quantum Meruit)

78.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "77" with the same force and effect as if fully set forth herein at length.

79.     Mr. McMullan worked diligently and tirelessly for Defendants, or their predecessors, for twenty-one uninterrupted years.

80.     By all measures, Mr. McMullan was successful in his various positions over the

-13-

years; as demonstrated by his repeated promotions and presentations of greater responsibilities.

81.    However, in recent years, Mr. McMullan was assigned additional duties, those commensurate with employees in higher levels and more highly compensated positions, without receiving commensurate pay increases.

82.    Defendants presumed that because of his age that Mr. McMullan would not complain fearing that any complaint would lead to termination and having the daunting prospect of finding comparable employment in a small industry at an advanced age.

83.    Defendants counted on these facts and the reality of the marketplace when they saddled Mr. McMullan with additional duties, but without any additional compensation; all while younger, similarly situated employees were being paid commensurate with their duties an d responsibilities.

84.    Nevertheless, Mr. McMullan continued to diligently work for Defendants, or their predecessors, out of loyalty and with the reasonable expectation that he ultimately would be compensated for such dedication and that such loyalty and success would lead not only to the provision of well-warranted annual bonuses, but with the specific expectation that he would be entitle to severance upon his separation from the company.

85.    Defendants, or their predecessors, lead Mr. McMullan to believe that he would be fairly compensated for his additional work at the director level above and beyond his normal duties as a senior manager.

86.    Specifically, in the final year of his employment, Mr. McMullan specifically worked under the reasonable impression that he would be afforded a significant and material bonus, in part to ameliorate for the non-payment for his assumption of additional duties.

87.     That bonus -- which was earned, accrued and relied upon in good faith -- was denied to Mr. McMullan for no valid reason upon his improper dismissal from the company.

88.     Moreover, Defendants' past actions with regard to bonuses, acceleration of maturation of stock awards and severance awards created an implied contract regarding their provision of the same to individuals similar to Mr. McMullan upon which he reasonably worked in reliance upon.

89.     As a direct result of these breaches of implied contract the doctrine of quantum meruit, Plaintiff has suffered injury and harm.

WHEREFORE, Plaintiff respectfully requests judgment over and against Defendants:

Compensatory damages in the amount not less than One Hundred Thousand Dollars ($100,000.00); costs and disbursements of this action, including reasonable attorneys fees; and any such other or further relief as the Court deems fit and proper.

## JURY DEMAND

90.     Plaintiff hereby demands a trial by jury on all facts and issues raised herein.

Dated: New York, New York
May 10, 2007

Neal Brickman (NB0874)
Ethan Leopard (EL2497)
Law Offices of Neal Brickman
Attorneys for Plaintiff
317 Madison Avenue - 21st Floor
New York, New York 10017
(212) 986-6840

-15-

**Exhibit A**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:Brian McMullan<br>24 East Mayer Drive<br>Montebello, New York 10901 | From: Equal Employment Opportunity Commission<br>New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, New York 10004-2112 |

| | |
|---|---|
| [    ] | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR § 1601.7(a))* |

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2007-00234 | Enforcement Unit | (212) 336-3620 |

*(See also the additional information attached to this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

- [    ]  More than 180 days have passed since the filing of this charge.

- [    ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

- [    ]  The EEOC is terminating its processing of this charge.

- [    ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

- [ X ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

- [    ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Spencer H. Lewis, Jr., District Director

FEB 1 2 2007

*(Date Mailed)*

Enclosure(s)

cc:  **Respondent(s):**
Stephen Cafiero
Dir., Office of EEO & Compliance
Verizon
6815 Flanders Dr., Suite 250
San Diego, CA 92121

**CP ATTY:**
Ethan Leonard
Law Office of Neal Brickman
317 Madison Avenue, 21st Fl
New York, New York 10017

# FACTS ABOUT FILING
# AN EMPLOYMENT DISCRIMINATION SUIT
# IN FEDERAL COURT IN NEW YORK STATE

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a private lawsuit.

## WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. New York State has four federal districts:

- The **United States District Court for the Southern District of New York** is located at 500 Pearl Street in Manhattan. It covers the counties of Bronx, Dutchess, New York (Manhattan), Orange, Putnam, Rockland, Sullivan, and Westchester.

- The **United States District Court for the Eastern District of New York** is located at 225 Cadman Plaza in Brooklyn and covers the counties of Kings (Brooklyn), Nassau, Queens, Richmond (Staten Island), and Suffolk.

- The **United States District Court for the Western District of New York** is located at 68 Court Street in Buffalo. It covers the counties of Allegheny, Cattaraugus, Chautauqua, Chemung, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Schuyler, Seneca, Steuben, Wayne, Wyoming, and Yates.

- The **United States District Court for the Northern District of New York** is located at 100 South Clinton Street in Syracuse and covers the counties of Albany, Broome, Cayuga, Chanango, Clinton, Columbia, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Montgomery, Oneinda, Onandaga, Oswego, Otsego, Rensselaer, St. Lawrence, Saratoga, Schenectady, Schoharie, Tioga, Tompkins, Ulster, Warren, and Washington. This District Court's *pro Se* Attorney has offices at 10 Broad Street in Utica New York.

## WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit must be filed in U.S. District Court within <u>90 days</u> of the date you receive the enclosed final action. Once this 90 day period is over, unless you have filed suit, you will have lost your right to sue.

(Over)

# DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a *pro se* complaint. Every district court has either a clerk or staff attorney who can assist you in filing *pro se*. To find out how to file a *pro se* complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may vary from district to district.

You may, however, wish to retain a lawyer in order to adequately protect your legal rights. Whether you retain a private attorney, or file *pro se*, you must file your suit in the appropriate court within 90 days of receiving this mailing.

# WHAT IF I WANT A LAWYER BUT I CAN'T AFFORD ONE?

If you can't afford a lawyer, the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You must file papers with the court requesting the appointment of counsel. You should consult with the office of the district court that assists *pro se* complainants for specific instructions on how to seek counsel. The appointment of counsel in any *pro se* complaint is always at the discretion of the court.

Generally, the U.S. District Court charges a $250.00 filing fee to commence a lawsuit. However, the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists *pro se* complainants for information concerning the necessary procedure to request that the filing fee be waived.

# HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

American Bar Association
(312) 988-5522

New York State Bar Association
(800) 342-3661

National Employment Lawyers Association Referral Service
(212) 819-9450

Your County, City, or Municipal Lawyers or Bar Association may also be of assistance.

# HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge file to be destroyed after 2 years from the date of a no cause determination or six months after other types of final actions. If you file suit, and wish us to retain your file for more than the normal retention period, you or your attorney should forward a copy of your court complaint to this office within 10 days after you file suit. **If You File Suit, You or Your Attorney Should Also Notify this Office When the Lawsuit is Resolved.**